UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JUDY C. COCHRANE,**

Plaintiff,

v.                                                    CASE NO.  4:04-cv-475-RH

**DAVID F. HARVEY as Sheriff of Wakulla**
**County, Florida; LARRY O. CAMPBELL**
**as Sheriff of Leon County, Florida,**
**WILLIAM POOLE, Individually; and**
**LAUREL J. ALLIE, Individually,**

Defendants.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, JUDY C. COCHRANE, by and through her undersigned attorney,

and sues Defendants, DAVID F. HARVEY as Sheriff of Wakulla County, Florida;

LARRY O. CAMPBELL, as Sheriff of Leon County, Florida; WILLIAM POOLE,

Individually; and LAUREL J. ALLIE, Individually, and as grounds states as follows:

1.     This is an action for damages that exceed $15,000.00.

2.     Plaintiff is over the age of eighteen (18), is a resident of Leon County,

and is otherwise *sui juris*.

U.S. DISTRICT OF
NORTHERN FLA.

05 FEB 10  PM 3: 40

FILED

3.     At all times material, Defendant, DAVID F. HARVEY as Sheriff of Wakulla County, Florida, was named Sheriff of Wakulla County, and as such is the constitutional officer of Wakulla County Sheriff's Office ("WCSO"), a subdivision of the State of Florida.

4.     At all times material, Defendant, LARRY O. CAMPBELL as Sheriff of Leon County, Florida, was named Sheriff of Leon County, and as such is the constitutional officer of Leon County Sheriff's Office ("LCSO"), a subdivision of the State of Florida.

5.     Defendant, WILLIAM POOLE, at all times material, was employed as a major by Defendant WCSO.  He resides within the jurisdiction of this Court, upon information and belief, and is sued in his individual capacity.

6.     Defendant, LAUREL J. ALLIE, at all times material, was employed as a deputy by Defendant LCSO.  She resides within the jurisdiction of this Court, upon information and belief, and is sued in her individual capacity.

7.     Defendants WCSO and LCSO have waived sovereign immunity for the acts complained of by virtue of Section 768.28(6)(a), Florida Statutes.

8.     Pursuant to said statute Plaintiff had previously notified Defendants WCSO and LCSO and the Department of Insurance of her claim.  Copies of said correspondence are attached and made a part hereof as Exhibits "A" and "B" respectively.  The claims were not resolved during the six (6) month period that followed the notice of claim and all conditions precedent of Section 768.28(6)(a), Florida Statutes, have been met.

2

## FACTS APPLICABLE TO ALL COUNTS

### Warrantless Search and Seizure of Plaintiff's Home and Personal Effects

9.     On January 9, 2003 at 1:46 p.m., the WCSO received an e-mail message from Mary Kay Neumann of Madison, Wisconsin, concerning Plaintiff, whom she had never met nor spoken to.

10.     Ms. Neumann's e-mail, in fact, did nothing more than forward to the WCSO an e-mail which she had received at 11:19 p.m. – a day earlier – on January 8, 2003 – from another woman named Stefanja Dumonowski, of Calgary, Alberta, Canada.

11.     Like Ms. Neumann, Ms. Dumonowski had never met Plaintiff nor spoken to her, although both had a common interest in exotic birds.

12.     Ms. Dumonowski's e-mail to Ms. Neumann included and referred to an e-mail which Ms. Dumonowski had received from Plaintiff on January 8, 2003. In that e-mail, Plaintiff asked if Ms. Dumonowski could take care of two of Plaintiff's exotic birds if she (Plaintiff) "could not go on." Plaintiff also mentioned another one of her birds had special needs and that she (Plaintiff) would "have to find the perfect home for him." She stated that she couldn't "endure much longer" and wanted to make sure her flock of exotic bids was taken care of.

13.     When Ms. Dumonowski received Plaintiff's e-mail on January 8, 2003, Ms. Dumonowski, with no professional training or education in mental illness or treatment, sent an e-mail back to Plaintiff expressing concern that Plaintiff might take her own life, and asking that Plaintiff respond by e-mail.

3

14.     At the same time, Ms. Dumonowski, as mentioned, transmitted Plaintiff's e-mail of January 8 to Ms. Neumann asking for her help because she (Ms. Dumonowski) was afraid Plaintiff might harm herself.

15.     When Plaintiff received Ms. Dumonowski's e-mail expressing concern, Plaintiff promptly responded by e-mail at 5:45 a.m. on January 9, 2003. In that e-mail, Plaintiff apologized for having worried her and promised to get in touch with her that day.

16.     In fact, in her earlier e-mail to Ms. Dumonowski, Plaintiff had meant that because of serious financial difficulties she feared she would soon have to leave her home in Crawfordville, Wakulla County, and relocate to a Tallahassee apartment where she could no longer care for her exotic birds. She was making arrangements for others to care for her birds as she did not know how much longer she could "hold on" in Crawfordville.

17.     Ms. Dumonowski misinterpreted Plaintiff's earlier e-mail and jumped to the wrong conclusion. Plaintiff, in fact, had no desire or intent to harm herself.

18.     Rather Plaintiff, an experienced dental hygienist, had recently found professional re-employment at a dental office in Tallahassee. She looked forward to the future, to resuming her profession and to making new friends.

19.     WCSO received all of these e-mails, through Ms. Neumann, before 1:49 p.m. on January 9, 2003. At that time, acting on no information other than these e-mails, the WCSO dispatched Deputy Sheriff James Sessor to Plaintiff's

4

home at 168 Oak Wood Trail in Crawfordville.  Defendant Poole then also arrived at her home.

20.     At that time, Plaintiff was not at home but working at the dental office in Tallahassee.  No motor vehicles were at her home, as she is a single woman and she had driven to work that day.

21.     Deputy Sessor and Defendant Poole, nonetheless, proceeded to break and enter, then search Plaintiff's home and papers without a lawful warrant. Although the door was unlocked, Plaintiff had set the alarm before leaving for work that day.

22.     There were no exigent circumstances reasonably justifying this warrantless breaking, entering and search of Plaintiff's home and personal belongings, in violation of her constitutional rights to be secure in her home and personal effects and to be free from unreasonable search and seizure under the Fourth Amendment of the U.S. Constitution and Section 12, Article 1 of the Florida Constitution.

23.     These unlawful actions were unreasonably and demonstratively excessive, an over-reaction, and taken without authority, based solely on the misinterpretation of a few unsubstantiated  e-mails from a third-person (Ms. Dumonowski) whose reliability, including her prior knowledge of e-mail communications with Plaintiff, was utterly unknown to the WCSO.  The WCSO had made no effort to contact either Ms. Neumann or Ms. Dumonowski prior to

5

conducting the warrantless breaking, entering and search of Plaintiff's private home and personal effects.

**Alarming Co-Workers and Confronting Plaintiff At Place of Employment**

24.     Although finding no evidence of suicidal intent in Plaintiff's home or personal effects, Deputy Sessor and Defendant Poole contacted a dental office in Tallahassee, where Plaintiff had formerly been employed as a dental hygienist. They told the employee(s) there that Plaintiff had threatened to kill herself and asked where she was located.

25.     On learning that Plaintiff currently worked as a dental hygienist at the dental office of Robert H. Barr, D.M.D., in Tallahassee, Defendant Poole called Dr. Barr's office and instructed the employee answering the phone that it was her public duty to physically detain Plaintiff and prevent her from leaving the office.  He declared that Plaintiff had threatened to kill herself and that he (Defendant Poole) was "going to Baker Act her."

26.     Thus, Defendant Poole, based on the e-mail from Ms. Dumonowski, had already made a fixed and predetermined decision to involuntarily "commit" Plaintiff under the Baker Act, Chapter 394, Florida Statutes.  This decision to involuntarily "commit" her was premature and, based on the totality of the facts known to him, patently unreasonable.

27.     Defendant Poole then contacted LCSO, requesting that deputies meet him at Dr. Barr's dental office to assist.  Defendant Allie and Lieutenant Lewis, of the LCSO responded, arriving at Dr. Barr's office before Defendant Poole.

6

28.     Defendant Poole then arrived and provided Lieutenant Lewis and Defendant Allie with the e-mail transmittal from Ms. Dumonowski. Defendant Poole, however, did not tell them about Plaintiff's reassuring e-mail to Ms. Dumonowski that morning, where Plaintiff apologized for worrying her and promised to contact her during the day. Nor did Defendant Poole provide the two LCSO deputies with a copy of that e-mail.

29.     The three WCSO and LCSO deputies then proceeded to openly question the employees in Dr. Barr's office, telling them that Plaintiff had threatened to kill herself. The employees were alarmed by the assertion and protested that there must be some mistake — that Plaintiff was a stable person, that she dressed nicely, came to work each day on time, and did a good job.

30.     Defendant Poole, joined by LCSO deputies, rebuffed the pleas by Plaintiff's co-employees, with Defendant Poole declaring that he "had a stack of e-mails an inch thick" showing her threat to kill herself. This declaration was false, as he had no such stack of e-mails showing a threat to kill herself. All he had was the sparse e-mail transmittal of Ms. Dumonowski, forwarded by Ms. Neumann, and the reassuring e-mail response by Plaintiff.

**The Interrogation**

31.     The three deputies then ordered that Plaintiff, scared and embarrassed by the openly broadcast allegations, accompany them to a room where they interrogated her.

7

32.     One deputy asked if she had ever contemplated suicide at any time in the past, to which she replied, truthfully, that "Everyone has fleeting suicidal thoughts during extremely difficult times.  But I would never act on them."

33.     Plaintiff pled to be allowed to go home and care for her exotic birds, promising the deputies that she would not harm herself.

34.     When the deputies asked if she would submit to a voluntary mental examination she quickly agreed as she thought her counselor could quickly resolve the matter.  She begged the deputies to call her counselor, whom she had been seeing, but they refused, stating that "it didn't matter what her counselor said anyway."

35.     The deputies never disclosed or explained to her the purpose of an involuntary mental examination and she never refused to submit to a voluntary examination.  Indeed, she asked to be voluntarily examined by her counselor — a request rejected out of hand by the three deputies.

## Handcuffed, Deprived of Her Liberty and Committed for an Involuntary Examination

36.     The three deputies of WCSO and LCSO, without a reasonable or justifiable basis under Section 394.463(1), Florida Statutes, then took Plaintiff outside to the parking lot where, in public view, she was "patted down," handcuffed and transported to the Apalachee Center, Inc., where she was immersed in a terrifying ordeal behind locked doors.  The decision to commit the Plaintiff to

8

involuntary examination was made, individually and collectively, by Defendants Poole and Allie.

37.    At the facility, she was locked up for two days with severely disturbed mental patients and her pleas that she was not suicidal and wanted to go home were repeatedly rejected.  She was given drugs and her personal effects were removed.  She was told "to go along with the game" or she "would never get out." The facility psychologist who questioned her the next morning was amused by the whole incident.

38.    Finally, after two days, Plaintiff regained her liberty after a facility employee who had once been a dental patient of Plaintiff's intervened on her behalf.

39.    No reasonably prudent law enforcement officer could have objectively or reasonably concluded, based solely on the e-mail transmittal of Ms. Dumonowski, sent on by Ms. Neumann without comment, that there was a reasonable basis to deprive of her liberty and subject her to a mental examination against her will.

40.    On information and belief, the deputies of Defendants WCSO and LCSO had not been trained or educated as to the provisions of the Baker Act authorizing a law enforcement officer to forcibly take a person into custody and subject him or her to involuntary examination and coercive custody of a mental health facility.  Neither had they been properly trained or educated on when a search and seizure of a person's home could be undertaken without a warrant

9

based solely on a subjective belief that the person might be at risk of harming himself or herself.

41.     In fact, the warrantless search and seizure of Plaintiff's home and personal effects and the fixed decision by the three deputies to involuntarily "commit" Plaintiff under the Baker Act was the direct and proximate result of a custom and policy of Defendants WCSO and LCSO to relegate such matters to the unbridled or standardless discretion of their deputies.

**Humiliated, Stigmatized and Permanently Scarred**

42.     As a result of Defendants' wrongful actions, Plaintiff suffered public humiliation and was psychologically traumatized, stigmatized, and permanently scarred.   She suffered mental anguish, pain and suffering, and harm to her professional reputation.   Those losses are either permanent or continuing and Plaintiff will suffer further losses in the future.

## COUNT I

### 42 U.S.C. § 1983 — UNLAWFUL SEARCH AND SEIZURE AGAINST WCSO AND POOLE

43.     Plaintiff, JUDY C. COCHRANE, reavers and realleges the allegations contained in Paragraphs 1 through 42 and states as follows:

44.     This is an action against Defendants, WCSO and Poole, under the Fourth Amendment to the U.S. Constitutional made actionable under 42 U.S.C. § 1983.

45.    The warrantless search and seizure of Plaintiff's home and personal belongings conducted under color of Section 394.463, Florida Statutes, was in violation of Plaintiff's Fourth Amendment right to be secure in her home, papers and personal effects against unreasonable search and seizure.

46.    Based on the circumstances and totality of facts known to the WCSO, the warrantless search and seizure of Plaintiff's home had no objectively reasonable basis and was not justified by exigent circumstances.

47.    Further, the WCSO failed to adequately train its employees in investigating grounds for their exercise of the extraordinary "committing" power granted by Section 394.463, Florida Statutes; in conducting a warrantless search and seizure of the home and personal effects of the person under investigation; and in determining whether exigent circumstances exist for searching the person's home and effects without first obtaining a warrant.

48.    On information and belief, there was a policy or custom of the WCSO to relegate a Baker Act investigation under Section 394.463 and any searches or seizures conducted thereto to the unbridled or standardless discretion of the investigating deputy.

49.    The warrantless and unlawful search and seizure of Plaintiff's home and personal effects under color of law, namely Section 394.463, Florida Statutes, was the direct and proximate result of such policy or custom, causing the deprivation of Plaintiff's constitutionally protected right under the Fourth Amendment.

11

50.    As a result, Plaintiff suffered mental anguish and distress, a palpable loss of her privacy, and a flagrant deprivation of her right to be secure against unreasonable search and seizure in violation of the Fourth Amendment.

51.    Plaintiff has retained the law office of Watkins & Caleen, P.A., and has agreed to pay it a reasonable fee for its services in this action.

52.    Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, JUDY C. COCHRANE, demands judgment against Defendants, DAVID F. HARVEY as Sheriff of Wakulla County and WILLIAM POOLE, Individually, for damages and a trial by jury of all issues triable in this cause.

## COUNT II

### 42 U.S.C. § 1983 — UNLAWFUL DETENTION, SEIZURE AND INVOLUNTARY EXAMINATION AGAINST ALL DEFENDANTS

53.    Plaintiff, JUDY C. COCHRANE, reavers and realleges the allegations contained in Paragraphs 1 through 42 and states as follows:

54.    This is an action against all Defendants under the Fourth and Fourteenth Amendments to the U.S. Constitution made actionable by 42 U.S.C. § 1983.

55.    On January 9, 2003, Defendants under color of Section 394.463, Florida Statutes, unlawfully detained and seized Plaintiff, physically constraining her and subjecting her to a mental examination against her will. The facts and

12

circumstances known to Defendants were insufficient to cause a reasonably cautious person to believe that the Plaintiff met the criteria for involuntary examination set out in Section 394.463, Florida Statutes.

56.    Further, Defendants WCSO and LCSO failed to adequately train their employees in investigating grounds for their exercise of the extraordinary "committing" power granted by Section 394.463, Florida Statutes; in determining whether to physically constrain a person; and in determining whether to unilaterally commit a person for an involuntary mental examination under Section 394.463, Florida Statutes.

57.    On information and belief, there was a policy or custom of Defendants WCSO and LCSO to relegate to the complete discretion of their deputies any Baker Act investigation under Section 394.463 any detention of a person pursuant to such investigation, and any decision to commit the person for involuntary examination pursuant to Section 393.463, Florida Statutes.

58.    The detaining and taking of Plaintiff into custody and the submitting of her to an involuntary mental examination without sufficient cause under color of Section 394.463, Florida Statutes, was the proximate result of such policy or custom of Defendants.

59.    The conduct of Defendants toward Plaintiff was objectively unreasonable and violated her clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from unlawful seizure of

13

her person, detention without probable cause, and deprivation of liberty and right to privacy without due process of law.

60. Acting under color of law, Defendants WCSO and LCSO, pursuant to their official policy, custom and practice unlawfully, knowingly, recklessly or with deliberate indifference to the rights of Plaintiff, failed to instruct, supervise, control or discipline on a continuing basis the deputy sheriffs who detained, seized, and physically constrained her and subjected her to an involuntary mental examination in a locked-down mental health facility without reasonable or just cause under Section 394.463, Florida Statutes.

61. As a result, Plaintiff was stigmatized and suffered severe mental anguish and distress, pain and suffering, psychological trauma and harm to her professional reputation. Such losses are permanent or continuing and Plaintiff will suffer further losses in the future.

62. Plaintiff has retained the law office of Watkins & Caleen, P.A., and has agreed to pay it a reasonable fee for its services in this action.

63. Plaintiff is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, JUDY C. COCHRANE, demands judgment against Defendants, DAVID F. HARVEY as Sheriff of Wakulla County, LARRY O. CAMPBELL as Sheriff of Leon County, WILLIAM POOLE, Individually, and LAUREL J. ALLIE, Individually, for damages and a trial by jury of all issues triable in this cause.

14

## COUNT III

### NEGLIGENT PERFORMANCE OF DUTIES
### UNDER SECTION 394.463, FLORIDA STATUTES,
### AGAINST DEFENDANTS WCSO AND LCSO

64.    Plaintiff, JUDY C. COCHRANE, reavers and realleges the allegations contained in Paragraphs 1 through 42 and states as follows:

65.    This is an action against Defendants, WCSO and LCSO, for negligent performance of their statutory duties under Section 394.463, Florida Statutes.

66.    Under Section 394.463, Florida Statutes, Plaintiff could not be subjected to involuntary examination unless there is a substantial likelihood that without care or treatment she would cause serious bodily harm to herself in the near future as evidenced by recent behavior.  § 394.463(1)(b)2., Fla. Stat.  Moreover, Plaintiff could not be subjected to involuntary examination unless she first refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or unless she was unable to determine for herself whether examination was necessary.  § 394.463, Fla. Stat.

67.    In the instant case, Defendants negligently performed the statutory duties which they owed toward Plaintiff prior to subjecting her to involuntary "commitment" to a mental health facility for examination.  Namely, they subjected her to involuntary examination under Section 394.463, Florida Statutes, without her first refusing to submit to voluntary examination after a conscientious explanation and disclosure of the purpose of the examination; and without her meeting the

15

criteria for involuntary examination established by Section 394.463, Florida Statutes.

68.     In fact, Plaintiff did not refuse a voluntary examination. Rather, she asked that the deputies call her counselor, which they refused. Moreover, Plaintiff did not meet the criteria for involuntary examination contained in Section 394.463, Florida Statutes, and no reasonably prudent person could have concluded that she did.

69.     As a direct and proximate result of Defendants' actions, Plaintiff suffered public humiliation and was psychologically traumatized, stigmatized, and permanently scarred. She suffered mental anguish, pain and suffering, and harm to her professional reputation. Those losses are either permanent or continuing and Plaintiff will suffer further losses in the future.

WHEREFORE, Plaintiff, JUDY C. COCHRANE, demands judgment against Defendants, DAVID F. HARVEY as Sheriff of Wakulla County and LARRY O. CAMPBELL as Sheriff of Leon County, for damages and a trial by jury of all issues triable in this cause.

Respectfully submitted this 10th day of February, 2005.

16

R. L. Caleen, Jr.
Florida Bar No. 107367
Watkins & Caleen, P.A.
1725 Mahan Drive, Suite 201
P. O. Box 15828
Tallahassee, FL 32317-5828
(850) 671-2644 – Telephone
(850) 671-2732 – Facsimile

Attorneys for Plaintiff,
Judy C. Cochrane

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to Carol A. Falvey, Esq., Green & Falvey, P.A., 125 N.E. First Avenue, Suite 2, Ocala, FL 34470 and Barbara C. Fromm, Esq., Jolly & Peterson, P.A., P. O. Box 37400, Tallahassee, FL 32315, this 10th day of February, 2005.

R. L. CALEEN, JR.

17

# WATKINS & CALEEN, P.A.
### ATTORNEYS AND COUNSELORS AT LAW
1725 MAHAN DRIVE, SUITE 201
POST OFFICE BOX 15828
TALLAHASSEE, FLORIDA 32317-5828

(850) 671-2644
FAX (850) 671-2732
E-MAIL: lawyers@floridacourts.com

KARL DAVID ACUFF
R. L. CALEEN, JR.
W. DAVID WATKINS

August 13, 2003

VIA CERTIFIED MAIL —
RETURN RECEIPT REQUESTED

Sheriff David F. Harvey
Wakulla County Sheriff's Office
15 Oak Street
Crawfordville, FL 32327

Ms. Trilly Lester, Director
Division of Risk Management
Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0336

Mr. Tom Gallagher
Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0300

RE:   Judy C. Cochrane — Claimant
   (1)   Notice of Claim for the (tortious) negligent investigation, detention and
         placement of Claimant in receiving facility for involuntary examination
         pursuant to Section 394.463, Florida Statutes
   (2)   Notice of Claim for deprivation of Claimant's constitutional right to liberty
         and privacy in her person as well as her right to be secure in her home
         and papers against unreasonable search and seizure

Dear Sheriff Harvey, Mr. Gallagher and Ms. Lester:

   This firm represents Claimant, Judy C. Cochrane, who — by this letter — provides
notice of her claim against Sheriff David F. Harvey and the Wakulla County Sheriff's Office
("you") and the Division of Risk Management, Florida Department of Financial Services
pursuant to Section 768.28, Florida Statutes. This notice is a condition precedent to filing a
civil action against you for your negligent performance of a ministerial duty under Section
394.463, Florida Statutes, and your violation of Claimant's constitutional right to liberty and
privacy, and to be secure in her home, papers and effects from unreasonable search and
seizure.

Exhibit "A"

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 2

_____

I.

## CLAIMANT

| | |
|---|---|
| *Name:* | Judy C. Cochrane |
| *Address:* | 1218 Lowry Drive |
| | Tallahassee, FL 32312 |
| *Date of Birth:* | June 15, 1945 |
| *Place of Birth:* | Memphis, Tennessee |
| *SSN:* | 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 |

II.

## NATURE OF CLAIM

This is a claim for damages resulting from your negligent performance of a ministerial duty under Section 394.463, Florida Statutes; your violation of Claimant's statutory right to individual dignity under Section 394.459, Florida Statutes; your violation of her constitutional right to liberty and privacy under the Fifth and Fourteenth Amendments to the U.S. Constitution and Sections 2 and 23, Article I of the Florida Constitution; and your violation of her right to be secure in her home, papers and effects against unreasonable search and seizure under the Fourth Amendment of the U.S. Constitution and Section 12, Article I of the Florida Constitution. Liability for tortious performance of your statutory duties arises under Section 768.28, Florida Statutes, and liability for violation of rights secured by the U.S. Constitution arises under 42 U.S.C. § 1983.

III.

## FACTS

A.   *E-mail to WCSO*

On January 9, 2003, at 1:46 p.m. the Wakulla County Sheriff's Office ("WCSO") received an e-mail concerning Claimant from Mary Kay Neumann, employed by the Women's Psychotherapy Center of Wisconsin in Madison, Wisconsin. Ms. Neumann had never met Claimant and had never talked to her.

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 3

---

Ms. Neumann's e-mail to the WCSO referenced an attached e-mail about Claimant which Ms. Neumann had received at 11:19 p.m. on January 8, 2003 from a woman named Stefanja Dumonowski in Calgary, Alberta, Canada. Ms. Dumonowski, like Ms. Neumann, had also never met Claimant.

Ms. Neumann's e-mail did no more than forward Ms. Dumonowski's e-mail, without comment. Ms. Neumann gave no analysis or opinion, made no recommendation, and asked for no specific action by the WCSO.

## B. Speculation by Ms. Dumonowski

Ms. Dumonowski's e-mail, forwarded by Ms. Neumann, opined that Claimant was depressed and was going to commit suicide. Ms. Dumonowski is not a psychiatrist nor a psychologist, nor a mental health counselor and has no professional training or education in mental illness, disease or treatment. The sole basis for her opinion was an e-mail, also attached, which Ms. Dumonowski had received from Claimant on January 8, 2003. Claimant, in her e-mail to Ms. Dumonowski, had asked if Ms. Dumonowski could take care of two exotic pet birds — Merlin and Gemma — if Claimant "could not go on." Claimant wrote that she had found a home for two of her other pet birds but still had to find a home for a bird named Spike, who had special needs. She wanted to make sure her flock of birds was okay as she could not "endure much longer."

By these two phrases, Claimant was alluding to her belief that she would soon have to sell her cherished home in Crawfordville, where she had cared for her pet birds for years. She had no choice but to sell as she was facing serious financial difficulties resulting from the loss of her job as a dental hygienist six months earlier. She would have to soon relocate to an apartment in Tallahassee, where she could no longer care for her flock of pet birds. She did not know how long she could "hold on" in Crawfordville, as her move was imminent.

The Claimant was facing an unwelcome move — and taking painful steps to prepare for it. She would hang-on as long as she could but knew the move was inevitable. She, however, had no desire or intent to harm herself. She did not mean to imply by her words that she had any such desire or intent.

To the contrary, she looked forward to the future and new opportunities. After a long search for re-employment as a dental hygienist, she had found a position at the dental office

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 4

of Dr. Robert H. Barr, DMD, 354 Office Plaza Drive, Tallahassee, Florida. She was eager to resume her profession and make new friends.

C.    Claimant's Response to Ms. Dumonowski

In her e-mail Ms. Dumonowski, after expressing her concerns, asked Claimant to e-mail a response. At 5:45 a.m. on January 9, 2003, Claimant read Ms. Dumonowski's e-mail and realized that Ms. Dumonowski leapt to the wrong conclusion. Claimant immediately responded by e-mail, indicating that she was sorry that she (Claimant) had worried her (Ms. Dumonowski) and that she would write Ms. Dumonowski later and get in touch with her that day. (A copy of this response had also been forwarded to the WCSO.)

D.    Unlawful Search of Claimant's Home and Personal Papers

At 1:49 p.m. on January 9, 2003, acting on no information about Claimant other than what was stated in these few second-hand e-mails, Deputy Sheriff James Sessor of the WCSO arrived at Claimant's residence at 168 Oak Wood Trail in Crawfordville, Florida. No vehicle, other than the deputy's, was present at the home.

Major William Poole, of the WCSO, then arrived at the scene. At that time, both Deputy Sessor and Major Poole entered Claimant's home through a door on the back porch. Although the door was not locked, Claimant had set the alarm before leaving for work that morning. Deputy Sessor and Major Poole proceeded to break and enter the house, setting off the alarm and alerting the security company.

Both officers then searched the home and the personal effects and papers of Claimant. They did so without obtaining a search warrant or any consent from Claimant. No facts then known to them justified a warrantless search. Their search of Claimant's private home was based on the speculations of a Canadian citizen, about whom they had no information or history, and who had never even met Claimant.

E.    Lack of Support for Ms. Dumonowski's Speculation

Nothing in Claimant's e-mail to Ms. Dumonowski indicated that she (Claimant) intended to harm or kill herself. The two phrases relied on by Ms. Dumonowski and the WCSO, although ambiguous, did not do so — especially in the context of the rest of Claimant's initial

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 5

_____

e-mail to Ms. Dumonowski and her e-mail responding to Ms. Dumonowski. Claimant's initial e-mail indicated that she would still have to find a home for her remaining pet bird, "Spike," who had special needs. As already mentioned, Claimant's responding e-mail in the early morning of January 9, 2003, apologized for worrying her so, and promised to write and get in touch that day.

No qualified mental health professional or counselor had provided any analysis or opinion justifying the officers' search of Claimant's home, her papers and personal effects.

F.   **WCSO Leaps to a Conclusion**

Major Poole and Deputy Sessor then contacted the dental office where Claimant had formerly been employed as a dental hygienist, declaring that she threatened to kill herself. They then called Dr. Barr's dental office where she was currently employed. Major Poole, by telephone, instructed an employee in that office that it was her public duty to detain Claimant and not let her leave, stating that Claimant had threatened suicide, and that he was "going to Baker Act her."

Major Poole had thus reached a conclusion and a predetermined decision to involuntarily "commit" Claimant under the Baker Act. He had decided — based on nothing but Ms. Dumonowski's and Claimant's e-mail — that he would take Claimant into custody and subject her to involuntary examination and/or treatment under Chapter 394, Florida Statutes. He had leapt to a conclusion and made a premature judgment not justified by the facts.

G.   **LCSO Arrives at Claimant's Workplace**

Major Poole then contacted the Leon County Sheriff's Office ("LCSO"), asking LCSO officers to meet nim at Dr. Barr's office to assist in the investigation. Deputy Laurel J. Allie and Lt. Lewis, with the LCSO, responded. They arrived at Dr. Barr's office, where Claimant was working, after which Major Poole arrived and prcvided copies of the three e-mails to Deputy Allie and Lt. Lewis. Major Poole, however, made no mention of Claimant's e-mail response to Ms. Dumonowski that morning, where Claimant apologized for worrying her and promised to write that day.

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 6

## H.    Allegations Openly Broadcast

Claimant, confronted by three law enforcement officers, became frightened and confused, fearing something may have happened to her daughter who also lived in Tallahassee. Claimant, who had just recently begun full-time work at Dr. Barr's office, was embarrassed and humiliated by actions of Major Poole and the LCSO deputies in openly questioning other employees in Dr. Barr's office and telling them that Claimant had threatened to kill herself.

The other employees in the dental office were shocked and protested to the deputies that Claimant was a reliable employee. According to them, she was stable, dressed nicely, did a good job, and came to work on time. They pleaded with Major Poole and the other deputies that there must be a mistake. Major Poole responded to their pleas by telling them that he had a "stack of e-mails an inch thick" where she threatened to kill herself. This was a false statement, as he had no such thing.

## I.    Interrogation of Claimant

The three officers then took Claimant, scared and embarrassed, into a room and questioned her. She denied any intent to harm herself or commit suicide. After several questions, one officer asked if she had ever contemplated suicide, at any time in the past. She replied truthfully: "Everyone has fleeting suicidal thoughts during extremely difficult times. But I would never act on them."

She pleaded to be allowed to go home to her birds, and promised that she would not harm herself. When asked if she would submit to a voluntary examination, she quickly agreed, as she thought she could talk to her counselor and resolve the matter. She asked the officers, repeatedly, to call her counselor who was more aware of her mental state but they refused, stating "it didn't matter what her counselor said anyway."

But the three officers ignored her pleas, refusing to let anything she said dissuade them from their intended action — to take her into custody and subject her to involuntary examination under Section 394.463 of the Baker Act. She did <u>not</u> refuse to undergo voluntary examination, even though the officers — contrary to Section 394.463(1)(a), Florida Statutes — failed to give a conscientious explanation and disclosure of the purpose of the examination.

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 7

---

J.    *Handcuffed, Detained and Committed to Involuntary Examination*

The three officers took her outside to the parking lot, handcuffed her and transported her to the Apalachee Center receiving facility, where she was immersed in a terrifying nightmare. She was locked up for two days with severely disturbed mental patients. The psychiatrist who spoke with her the next morning was amused by the whole incident. Claimant asked him to call her counselor so she could go home, but he refused. They gave her drugs, removed her personal effects, and told her "to go along with the game" or she would "never get out." Throughout, she repeatedly denied being suicidal and pleaded to go home. Finally, after two days, she was released due to the intervention of an employee of the Center who was once Claimant's dental patient.

K.    *Humiliation and Damages*

Claimant was psychologically traumatized, stigmatized and permanently scarred by the wrongful and negligent actions of the three officers of the WCSO and LCSO. Her home was invaded and searched without a warrant, without her consent and without good cause. She was handcuffed, deprived of her liberty and privacy, and forcibly detained against her will. She was coerced into a two-day ordeal, locked up with severely disturbed persons and told to "go along with the program or she would never get out." She was embarrassed and humiliated at her place of work by the actions of the three officers, who were negligent in failing to conduct a thorough investigation, in handcuffing her, and in subjecting her to an involuntary examination that lasted two days. As a result of their negligent actions, she has been permanently stigmatized at her current and former places of employment and become the object of sympathy or ridicule.

L.    *Negligence by WCSO and LCSO*

Under Section 394.463(1)(a), Florida Statutes, no person may be subjected to involuntary examination unless (1) that person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination or (2) the person is unable to determine for himself or herself whether examination is necessary. Here, you negligently subjected Claimant to involuntary examination without satisfying either of these conditions.

Sheriff David F. Harvey
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 8

Moreover, under this statute, Claimant did not qualify for involuntary examination unless there was a substantial likelihood that without care or treatment she would cause serious bodily harm to herself in the near future as evidenced by recent behavior. §394.463(1)(b)2., Fla. Stat. Under the facts known at the time, you were negligent in subjecting her to involuntary examination as this criterion was not satisfied.

The three officers of the WCSO and the LCSO were not properly trained and educated to perform their duties under Section 394.463(1) of the Baker Act. Neither the WCSO nor LCSO has an adequate program to train officers to make "committal" determinations under Section 394.463(1), Florida Statutes. By practice and policy, both Sheriff's Offices allow these determinations to be made by officers neither trained nor educated in mental health or the factors to consider when determining whether a person meets the criteria for involuntary examination under Section 394.463(1), Florida Statutes. The officers, although well intended, overreacted to limited information and acted without a reasonable basis. Under color of law, they effectively deprived Claimant of her constitutional right to liberty and privacy, her right to be free from unreasonable and unauthorized search of her home, papers and personal effects, and her statutory right to fair and dignified treatment in accordance with Chapter 394, Florida Statutes. She has been stigmatized and irreparably damaged, having been falsely accused of threatening suicide in "a stack of e-mails an inch thick" and removed from her place of work in handcuffs by three armed officers, who subjected her to an involuntary examination.

Please contact me if you have any questions. We seek a just and speedy resolution of this claim for damages, which exceed $100,000. Settlement is preferable but, if necessary, the Claimant will seek relief in a civil court of competent jurisdiction, including attorneys' fees and costs.

Thank you for your consideration.

Sincerely,

R. L. Caleen, Jr.

1226-1:RLC:ko

# WATKINS & CALEEN, P.A.

### ATTORNEYS AND COUNSELORS AT LAW

1725 MAHAN DRIVE, SUITE 201
POST OFFICE BOX 15828
TALLAHASSEE, FLORIDA 32317-5828

KARL DAVID ACUFF
R. L. CALEEN, JR.
W. DAVID WATKINS

(850) 671-2644
FAX (850) 671-2732
E-MAIL: lawyers@floridacourts.com

August 13, 2003

**VIA CERTIFIED MAIL —
RETURN RECEIPT REQUESTED**

Sheriff Larry O. Campbell
Leon County Sheriff's Office
Post Office Box 727
Tallahassee, FL 32301

Ms. Trilly Lester, Director
Division of Risk Management
Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0336

Mr. Tom Gallagher
Chief Financial Officer
Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0300

RE:  Judy C. Cochrane — Claimant
(1)  Notice of Claim for the (tortious) negligent investigation, detention and placement of Claimant in receiving facility for involuntary examination pursuant to Section 394.463, Florida Statutes
(2)  Notice of Claim for deprivation of Claimant's constitutional right to liberty and privacy in her person as well as her right to be secure in her home and papers against unreasonable search and seizure

Dear Sheriff Campbell, Mr. Gallagher and Ms. Lester:

This firm represents Claimant, Judy C. Cochrane, who — by this letter — provides notice of her claim against Sheriff Larry O. Campbell and the Leon County Sheriff's Office ("you") and the Division of Risk Management, Florida Department of Financial Services pursuant to Section 768.28, Florida Statutes.  This notice is a condition precedent to filing a civil action against you for your negligent performance of a ministerial duty under Section 394.463, Florida Statutes, and your violation of Claimant's constitutional right to liberty and privacy, and to be secure in her home, papers and effects from unreasonable search and seizure.



Exhibit "B"

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 2

I.

## CLAIMANT

| | |
|---|---|
| *Name:* | Judy C. Cochrane |
| *Address:* | 1218 Lowry Drive |
| | Tallahassee, FL 32312 |
| *Date of Birth:* | June 15, 1945 |
| *Place of Birth:* | Memphis, Tennessee |
| *SSN:* | 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 |

II.

## NATURE OF CLAIM

This is a claim for damages resulting from your negligent performance of a ministerial duty under Section 394.463, Florida Statutes; your violation of Claimant's statutory right to individual dignity under Section 394.459, Florida Statutes; your violation of her constitutional right to liberty and privacy under the Fifth and Fourteenth Amendments to the U.S. Constitution and Sections 2 and 23, Article I of the Florida Constitution; and your violation of her right to be secure in her home, papers and effects against unreasonable search and seizure under the Fourth Amendment of the U.S. Constitution and Section 12, Article I of the Florida Constitution.  Liability for tortious performance of your statutory duties arises under Section 768.28, Florida Statutes, and liability for violation of rights secured by the U.S. Constitution arises under 42 U.S.C. § 1983.

III.

## FACTS

### A.    *E-mail to WCSO*

On January 9, 2003, at 1:46 p.m. the Wakulla County Sheriff's Office ("WCSO") received an e-mail concerning Claimant from Mary Kay Neumann, employed by the Women's Psychotherapy Center of Wisconsin in Madison, Wisconsin.  Ms. Neumann had never met Claimant and had never talked to her.

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 3

---

Ms. Neumann's e-mail to the WCSO referenced an attached e-mail about Claimant which Ms. Neumann had received at 11:19 p.m. on January 8, 2003 from a woman named Stefanja Dumonowski in Calgary, Alberta, Canada. Ms. Dumonowski, like Ms. Neumann, had also never met Claimant.

Ms. Neumann's e-mail did no more than forward Ms. Dumonowski's e-mail, without comment. Ms. Neumann gave no analysis or opinion, made no recommendation, and asked for no specific action by the WCSO.

B.   *Speculation by Ms. Dumonowski*

Ms. Dumonowski's e-mail, forwarded by Ms. Neumann, opined that Claimant was depressed and was going to commit suicide. Ms. Dumonowski is not a psychiatrist nor a psychologist, nor a mental health counselor and has no professional training or education in mental illness, disease or treatment. The sole basis for her opinion was an e-mail, also attached, which Ms. Dumonowski had received from Claimant on January 8, 2003. Claimant, in her e-mail to Ms. Dumonowski had asked if Ms. Dumonowski could take care of two exotic pet birds — Merlin and Gemma — if Claimant "could not go on." Claimant wrote that she had found a home for two of her other pet birds but still had to find a home for a bird named Spike, who had special needs. She wanted to make sure her flock of birds was okay as she could not "endure much longer."

By these two phrases, Claimant was alluding to her belief that she would soon have to sell her cherished home in Crawfordville, where she had cared for her pet birds for years. She had no choice but to sell as she was facing serious financial difficulties resulting from the loss of her job as a dental hygienist six months earlier. She would have to soon relocate to an apartment in Tallahassee, where she could no longer care for her flock of pet birds. She did not know how long she could "hold on" in Crawfordville, as her move was imminent.

The Claimant was facing an unwelcome move — and taking painful steps to prepare for it. She would hang-on as long as she could but knew the move was inevitable. She, however, had no desire or intent to harm herself. She did not mean to imply by her words that she had any such desire or intent.

To the contrary, she looked forward to the future and new opportunities. After a long search for re-employment as a dental hygienist, she had found a position at the dental office

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 4

---

of Dr. Robert H. Barr, DMD, 354 Office Plaza Drive, Tallahassee, Florida.  She was eager to resume her profession and make new friends.

C.    *Claimant's Response to Ms. Dumonowski*

In her e-mail Ms. Dumonowski, after expressing her concerns, asked Claimant to e-mail a response.  At 5:45 a.m. on January 9, 2003, Claimant read Ms. Dumonowski's e-mail and realized that Ms. Dumonowski leapt to the wrong conclusion.  Claimant immediately responded by e-mail, indicating that she was sorry that she (Claimant) had worried her (Ms. Dumonowski) and that she would write Ms. Dumonowski later and get in touch with her that day.  (A copy of this response had also been forwarded to the WCSO.)

D.    *Unlawful Search of Claimant's Home and Personal Papers*

At 1:49 p.m. on January 9, 2003, acting on no information about Claimant other than what was stated in these few second-hand e-mails, Deputy Sheriff James Sessor of the WCSO arrived at Claimant's residence at 168 Oak Wood Trail in Crawfordville, Florida.  No vehicle, other than the deputy's, was present at the home.

Major William Poole, of the WCSO, then arrived at the scene.  At that time, both Deputy Sessor and Major Poole entered Claimant's home through a door on the back porch.  Although the door was not locked, Claimant had set the alarm before leaving for work that morning.  Deputy Sessor and Major Poole proceeded to break and enter the house, setting off the alarm and alerting the security company.

Both officers then searched the home and the personal effects and papers of Claimant.  They did so without obtaining a search warrant or any consent from Claimant.  No facts then known to them justified a warrantless search.  Their search of Claimant's private home was based on the speculations of a Canadian citizen, about whom they had no information or history, and who had never even met Claimant.

E.    *Lack of Support for Ms. Dumonowski's Speculation*

Nothing in Claimant's e-mail to Ms. Dumonowski indicated that she (Claimant) intended to harm or kill herself.  The two phrases relied on by Ms. Dumonowski and the WCSO, although ambiguous, did not do so — especially in the context of the rest of Claimant's initial

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester .
August 13, 2003
Page 5

e-mail to Ms. Dumonowski and her e-mail responding to Ms. Dumonowski. Claimant's initial e-mail indicated that she would still have to find a home for her remaining pet bird, "Spike," who had special needs. As already mentioned, Claimant's responding e-mail in the early morning of January 9, 2003, apologized for worrying her so, and promised to write and get in touch that day.

No qualified mental health professional or counselor had provided any analysis or opinion justifying the officers' search of Claimant's home, her papers and personal effects.

F.     **WCSO Leaps to a Conclusion**

Major Poole and Deputy Sessor then contacted the dental office where Claimant had formerly been employed as a dental hygienist, declaring that she threatened to kill herself. They then called Dr. Barr's dental office where she was currently employed. Major Poole, by telephone, instructed an employee in that office that it was her public duty to detain Claimant and not let her leave, stating that Claimant had threatened suicide, and that he was "going to Baker Act her."

Major Poole had thus reached a conclusion and a predetermined decision to involuntarily "commit" Claimant under the Baker Act. He had decided — based on nothing but Ms. Dumonowski's and Claimant's e-mail — that he would take Claimant into custody and subject her to involuntary examination and/or treatment under Chapter 394, Florida Statutes. He leapt to a conclusion and made a premature judgment not justified by the facts.

G.     **LCSO Arrives at Claimant's Workplace**

Major Poole then contacted the Leon County Sheriff's Office ("LCSO"), asking LCSO officers to meet him at Dr. Barr's office to assist in the investigation. Deputy Laurel J. Allie and Lt. Lewis, with the LCSO, responded. They arrived at Dr. Barr's office, where Claimant was working, after which Major Poole arrived and provided copies of the three e-mails to Deputy Allie and Lt. Lewis. Major Poole, however, made no mention of Claimant's e-mail response to Ms. Dumonowski that morning, where Claimant apologized for worrying her and promised to write that day.

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 6

H.    *Allegations Openly Broadcast*

Claimant, confronted by three law enforcement officers, became frightened and confused, fearing something may have happened to her daughter who also lived in Tallahassee. Claimant, who had just recently begun full-time work at Dr. Barr's office, was embarrassed and humiliated by actions of Major Poole and the LCSO deputies in openly questioning other employees in Dr. Barr's office and telling them that Claimant had threatened to kill herself.

The other employees in the dental office were shocked and protested to the deputies that Claimant was a reliable employee. According to them, she was stable, dressed nicely, did a good job, and came to work on time. They pleaded with Major Poole and the other deputies that there must be a mistake. Major Poole responded to their pleas by telling them that he had a "stack of e-mails an inch thick" where she threatened to kill herself. This was a false statement, as he had no such thing.

I.    *Interrogation of Claimant*

The three officers then took Claimant, scared and embarrassed, into a room and questioned her. She denied any intent to harm herself or commit suicide. After several questions, one officer asked if she had ever contemplated suicide, at any time in the past. She replied truthfully: "Everyone has fleeting suicidal thoughts during extremely difficult times. But I would never act on them."

She pleaded to be allowed to go home to her birds, and promised that she would not harm herself. When asked if she would submit to a voluntary examination, she quickly agreed, as she thought she could talk to her counselor and resolve the matter. She asked the officers, repeatedly, to call her counselor who was more aware of her mental state but they refused, stating "it didn't matter what her counselor said anyway."

But the three officers ignored her pleas, refusing to let anything she said dissuade them from their intended action — to take her into custody and subject her to involuntary examination under Section 394.463 of the Baker Act. She did not refuse to undergo voluntary examination, even though the officers — contrary to Section 394.463(1)(a), Florida Statutes — failed to give a conscientious explanation and disclosure of the purpose of the examination.

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 7

_____

J.   *Handcuffed, Detained and Committed to Involuntary Examination*

The three officers took her outside to the parking lot, handcuffed her and transported her to the Apalachee Center receiving facility, where she was immersed in a terrifying nightmare. She was locked up for two days with severely disturbed mental patients. The psychiatrist who spoke with her the next morning was amused by the whole incident. Claimant asked him to call her counselor so she could go home, but he refused. They gave her drugs, removed her personal effects, and told her "to go along with the game" or she would "never get out." Throughout, she repeatedly denied being suicidal and pleaded to go home. Finally, after two days, she was released due to the intervention of an employee of the Center who was once Claimant's dental patient.

K.   *Humiliation and Damages*

Claimant was psychologically traumatized, stigmatized and permanently scarred by the wrongful and negligent actions of the three officers of the WCSO and LCSO. Her home was invaded and searched without a warrant, without her consent and without good cause. She was handcuffed, deprived of her liberty and privacy, and forcibly detained against her will. She was coerced into a two-day ordeal, locked up with severely disturbed persons and told to "go along with the program or she would never get out." She was embarrassed and humiliated at her place of work by the actions of the three officers, who were negligent in failing to conduct a thorough investigation, in handcuffing her, and in subjecting her to an involuntary examination that lasted two days. As a result of their negligent actions, she has been permanently stigmatized at her current and former places of employment and become the object of sympathy or ridicule.

L.   *Negligence by WCSO and LCSO*

Under Section 394.463(1)(a), Florida Statutes, no person may be subjected to involuntary examination unless (1) that person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination or (2) the person is unable to determine for himself or herself whether examination is necessary. Here, you negligently subjected Claimant to involuntary examination without satisfying either of these conditions.

Sheriff Larry O. Campbell
Mr. Tom Gallagher
Ms. Trilly Lester
August 13, 2003
Page 8

Moreover, under this statute, Claimant did not qualify for involuntary examination unless there was a substantial likelihood that without care or treatment she would cause serious bodily harm to herself in the near future as evidenced by recent behavior. §394.463(1)(b)2., Fla. Stat.  Under the facts known at the time, you were negligent in subjecting her to involuntary examination as this criterion was not satisfied.

The three officers of the WCSO and the LCSO were not properly trained and educated to perform their duties under Section 394.463(1) of the Baker Act.  Neither the WCSO nor LCSO has an adequate program to train officers to make "committal" determinations under Section 394.463(1), Florida Statutes.  By practice and policy, both Sheriff's Offices allow these determinations to be made by officers neither trained nor educated in mental health or the factors to consider when determining whether a person meets the criteria for involuntary examination under Section 394.463(1), Florida Statutes.  The officers, although well intended, overreacted to limited information and acted without a reasonable basis.  Under color of law, they effectively deprived Claimant of her constitutional right to liberty and privacy, her right to be free from unreasonable and unauthorized search of her home, papers and personal effects, and her statutory right to fair and dignified treatment in accordance with Chapter 394, Florida Statutes.  She has been stigmatized and irreparably damaged, having been falsely accused of threatening suicide in "a stack of e-mails an inch thick" and removed from her place of work in handcuffs by three armed officers, who subjected her to an involuntary examination.

Please contact me if you have any questions.  We seek a just and speedy resolution of this claim for damages, which exceed $100,000.  Settlement is preferable but, if necessary, the Claimant will seek relief in a civil court of competent jurisdiction, including attorneys' fees and costs.

Thank you for your consideration.

Sincerely,

R. L. Caleen, Jr.

1226-1:RLC:ko